UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORLANDO MARADRELL KENT,<br><br>Plaintiff,<br><br>v.<br><br>MELBA STARR, et al.,<br><br>Defendants. | No. 2:18-cv-01943 AC P<br><br>ORDER and<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff is a state prisoner proceeding pro se with a civil rights complaint filed pursuant to 42 U.S.C. § 1983, and a motion for leave to proceed in forma pauperis filed pursuant to 28 U.S.C. § 1915. This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, plaintiff is granted leave to proceed in forma pauperis, but the undersigned recommends that this action be dismissed without leave to amend.

II. In Forma Pauperis Application

Plaintiff's motion to proceed in forma pauperis, ECF No. 2, supported by a copy of his prison trust account statement, ECF No. 6, make the showing required by 28 U.S.C. § 1915(a). Accordingly, plaintiff's request to proceed in forma pauperis will be granted.

////

1

Plaintiff must nevertheless pay the statutory filing fee of $350.00 for this action. See 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

### III. Screening of Plaintiff's Complaint

#### A. Legal Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Iqbal at 678 (quoting Twombly at 570). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly at 557).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

### B. Plaintiff's Allegations

Plaintiff challenges the decision of a "Reasonable Accommodation Panel" denying his request for "extended stay privileges" based on the Panel's finding that plaintiff's disability did not impact his extended placement. Plaintiff alleges that, on October 4, 2017, he arrived at the San Quentin State Prison (SQSP) Reception Center (RC) for processing and placement. Plaintiff was informed that he would be transferred to Deuel Vocational Institution (DVI) for processing under the Americans with Disabilities Act (ADA), and was so transferred on October 13, 2017. After ninety days at DVI, plaintiff requested "extended stay privileges as per the Armstrong Remedial Plan," and his request was denied by the Panel. ECF No. 1 at 5. Plaintiff is now incarcerated at California State Prison Solano. Plaintiff avers, id.:

> I appealed the Panel's recommendation and was denied at every level of the appeal process. I believe that since I was transferred from San Quentin State Prison to Deuel Vocational Institution due to my disability that it impacts my placement in other prisons as well. [As a result] I will not be paroled sooner [because] the extended stay privileges [were denied]. Also it has delayed my rehabilitation process.

The defendants named in the complaint are the members of the "Reasonable Accommodation Panel." Plaintiff seeks "nominal and punitive damages of an amount to be named later." Id. at 6.

////

////

### C. Armstrong Remedial Plan

The Armstrong Remedial Plan I, initially issued in 2001 by the United States District Court for the Northern District of California, describes the processes that must be followed by the California Department of Corrections and Rehabilitation (CDCR) in providing care for incarcerated inmates with disabilities. In pertinent part, the Plan provides:

> Inmates with disabilities will be processed out of RCs [Reception Centers] in a timely manner, in no more than 60 days from the date they are received by the Department, unless detained due to factors not attributable to the Department's delay . . . . Any period of time beyond the initial 60 days of a disabled inmate's stay at an RC shall be referred to as the inmate's extended stay.
>
> If a disabled inmate remains at a RC for more than 60 days, a presumption arises that the extended stay is solely due to the inmate's disability. To overcome this presumption, CDC must demonstrate that the inmate's transfer out of the RC was at no time delayed solely due to the inmate's disability. In this case, CDC need not accommodate the inmate for the extended stay. Alternatively, CDC may demonstrate that the cumulative period of all disability-related delays was shorter than the inmate's extended stay, in which case CDC need only accommodate the inmate for the cumulative period of disability-related delays.
>
> Verification that the inmate's extended stay in the RC was not due to the disability may be demonstrated by documentation reflecting that the inmate's disability does not impact placement, i.e., CDC Forms 1845 (Section D), 128C, or 128G. . . .
>
> When it comes to CDC's attention that a disabled inmate's RC stay has been extended beyond 60 days solely due to the inmate's disability that impacts placement . . . , CDC shall accommodate the inmate as described below. . . . Qualifying inmates may file a CDC Form 1824, Reasonable Accommodation or Modification Request, to request accommodation for an extended stay.

Armstrong Remedial Plan I, as amended January 3, 2001, at p. 10.[1]

The Plan further provides that "[d]isabled inmates with disabilities severe enough to impact placement . . . who remain at RCs for extended stays solely due to the inmate's disability shall be granted, during their extended stays, privileges that are available at mainline institutions, as outlined in CCR, Title 15, Section 3044(d), Privilege Group A. . . . If the classification

---

[1] See generally Armstrong v. Davis, Case No. 94-cv-2307 CW P (N. Dist.); Armstrong v. Davis, 275 F. 3d 849 (9th Cir. 2001); see also https://www.cdcr.ca.gov/BOPH/docs/ADA-Resources/ARMSTRONG%20I%20Remedial%20Plan.pdf (as set forth on the CDCR's website and cited herein).

committee determines that the extended stay is solely due to the disability, the corresponding CDC Form 128G granting Privilege Group A shall be forwarded to appropriate custody staff to ensure privileges are provided as required." Id. at 10-1. On the other hand, "[i]f the classification committee determines that the extended RC stay is not solely due to the disability, the CDC Form 128G shall document the decision and reflect that determination and the fact that the inmate is not eligible for Privilege Group A during his/her extended stay in the RC." Id. at 11.

### D. Analysis

The gravamen of the complaint is that the "Reasonable Accommodation Panel" erred in finding that plaintiff's incarceration at DVI (and/or combined incarceration at the SQSP RC and DVI) was not solely attributable to plaintiff's disabilities, thus precluding plaintiff from Privilege Group A status during that period. Plaintiff contends this decision delayed his rehabilitation process and therefore his release on parole, for which he seeks only monetary damages.

The court initially notes that plaintiff's allegations do not clearly rest on the terms of the Armstrong Remedial Plan, which expressly apply only to a disabled inmate's confinement in a "reception center." Plaintiff was housed at the SQSP Reception Center for only nine days, far less than the sixty days needed to trigger the Plan's extended stay assessment. Although plaintiff alleges that he was then transferred to DVI for "processing under the ADA," it is not clear that this period of time was at a "reception center" within the meaning of the Plan.

Moreover, to the extent plaintiff is alleging that the Panel's decision violated the Armstrong Remedial Plan itself, violations of the Plan do not provide an independent basis for a damages action but must be addressed through the procedures established by the Plan. See Roberts v. California Dept. of Corr. & Rehab., Case No. 2:12-cv-0247 KJM AC P, 2014 WL 2109925, at *8 2014 U.S. Dist. LEXIS 69275, at *22-3 (E.D. Cal. May 20, 2014) (collecting cases).

Additionally, it is well established that prisoners have no federally protected liberty interest in their classification status or similar administrative decisions. See Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987). "[I]t is well settled that prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their

custodial status." McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir.1990) (citations and internal quotation marks omitted). Accord, Garcia v. Biter, 2016 WL 2625840, at *2 n.2, 2016 U.S. Dist. LEXIS 61252, at *5 n.2 (Case No. 1:13cv0599 LJO SKO P) (E.D. Cal. May 9, 2016) ("Plaintiff's housing status and other custody or classification factors are left to the sound discretion of prison officials."). Hence, plaintiff cannot state a federal due process claim based on the Panel's classification decision.

Nor does the complaint state a cognizable claim under the ADA. To state a claim under Title II of the ADA, plaintiff must allege that he was denied a benefit or service accorded similarly situated inmates "by reason of" his disability. Simmons v. Navajo County, 609 F.3d 1011, 1021 (9th Cir. 2010) (citation omitted). The duty to provide "reasonable accommodations" or "reasonable modifications" for the disabled arises only when a policy, practice or procedure discriminates on the basis of disability. See Weinreich v. Los Angeles County MTA, 114 F.3d 976, 979 (9th Cir. 1997). In contrast, the accommodation sought by plaintiff in this action (participation in Privilege Group A) is available to all disabled inmates experiencing an "extended stay," provided the extended stay was attributable solely to the inmate's disabilities. Moreover, "[t]o recover monetary damages under Title II of the ADA . . . , a plaintiff must prove intentional discrimination on the part of the defendant," which is not alleged in the instant complaint. See Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001) (citation and fns. omitted).

Even if plaintiff could state a cognizable federal claim based on the Panel's challenged decision, the named defendants would be immune from suit due to the professional discretion inherent in their decision making. Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Qualified immunity attaches even to defendants who hold a reasonable, though mistaken, belief about the facts or about what the law requires in a particular situation. Id. at 205. Here, members of the Panel could have

reasonably concluded that plaintiff's putative extended stay was due not solely to his disabilities.

For these reasons, the court finds that the complaint does not state a cognizable federal civil rights claim and this deficiency cannot be cured by amendment. A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013); accord Lopez, supra, 203 F.3d at 1129 ("Courts are not required to grant leave to amend if a complaint lacks merit entirely."). Because it appears that plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable federal civil rights claim, this action should be dismissed without leave to amend.

IV. Conclusion

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's application to proceed in forma pauperis, ECF No. 2, is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §1915(b)(1). All fees shall be collected and paid in accordance with this court's order filed concurrently herewith.

3. The Clerk of Court is directed to randomly assign a district judge to this action.

Further, IT IS HEREBY RECOMMENDED that this action be dismissed without leave to amend for failure to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A(b)(1).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that

////
////
////
////
////

failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: July 31, 2018

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE